**In re the MARRIAGE OF H. B., Respondent,**

**and**

**B. B., Appellant.**

**No. KCD 29320.**

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

Marilyn M. Shapiro, Kansas City, for appellant.

Michael W. Manners, Michael J. Albano, Independence, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

The trial court ordered dissolution of the marriage between the parties and awarded custody of the daughter, 2½ years old at the time of trial, to the husband. The wife appeals only as to the award of custody. Her Points on Appeal, greatly condensed, are that: 1) the trial court excluded the testimony of her expert witnesses, and 2) the award of custody was not supported by evidence and was against the weight of the evidence.

## I.

The expert testimony sought to be introduced consisted of that of a clinical psychologist and his assistant. The wife argues that her mental and emotional stability had been put in issue by the husband and his witnesses and that therefore her mental health became a relevant issue under Sec. 452.375(5) RSMo Supp.1973. The point as to the admissibility of this expert testimony has not been properly preserved for appellate review.

The offer of proof was made at trial in the following form:

"Dr. Lucian Cordaro is a clinical psychologist. He would have testified to the fact that Mrs. B—exhibits good reality contact, is deeply concerned about retaining custody, has realistic sense of what the issues are and what would be required for continued custody; that as to maturity she neither denies nor tries to evade the fact that she has done some things in the past which were not in the best of judgment. However, she is earnest and consistent in attempting to repeat—in attempting to avoid these mistakes; that Mrs. B—'s behavior, her personal conduct, did not suggest her to be an unfit parent; that Dr. Cordaro and the party who assisted on the report were convinced of her genuine concern for children and their best interest.

"As to the recommendations, Dr. Cordaro and his assistant believed that Mrs. B—'s emotional stability and capacity for parenthood were sufficient. It was their recommendation that in the absence of any evidence approaching child abuse that there would be no reason for changing custody."

It will be observed that the proposed witnesses did not give their testimony in question and answer form, but instead the proposed testimony was merely summarized by counsel in her own words. That failed to measure up to the required procedure as stated in *State v. Sullivan*, 553 S.W.2d 510, l.c. 513 (Mo.App.1977): "It has long been the rule in this state that the proper proce-

dure to present and preserve such an offer is to have the witnesses present; put them on the stand; propound the questions; and thus enable the trial court to intelligently rule upon, and an appellate court to review, the propriety and admissibility of the evidence sought to be elicited."

■ Aside from that, and assuming that the husband and the trial judge waived strict compliance with the foregoing rule, still the rejection of the evidence in question cannot be considered prejudicial error. The wife's claim that the husband interjected the issue of her mental health rests in major part upon the testimony of the social worker, Gwylyn Clawson, that the wife was "unstable." The term "unstable" is sometimes used to describe a lack of mental health. That was the case in In re Marriage of Zigler, 529 S.W.2d 909 (Mo.App. 1975), upon which the wife here heavily relies. However, the term was not used in that sense by witness Clawson. The husband's attorney made it abundantly clear that Clawson's testimony was not offered to attack the wife's mental health. In this respect, the husband's counsel stated on the record: "We have not called into question Mrs. B—'s mental capacity." This statement by counsel is substantiated by the definition given by Clawson in her testimony as to what she meant by the term "stability":

"I guess maybe reliability would be a one-word definition of it. To have some—I can't think of a better definition than reliability. Stability is to be where you are expected to be when you are expected to be there, to be consistent in your actions, to have a plan of life and to stick to it and not to make abrupt changes in important decisions just on the basis of the spur of the moment."

Thus, the evidence offered by the husband here was not intended to and did not raise an issue as to the wife's mental health. In the present case there was no issue of mental health as to which the expert testimony of a psychologist would be relevant.

Moreover, the proffered testimony to the extent that it was factual was accepted by the trial judge and it was only the recommendations summarized by counsel that the trial court found to be objectionable. In this respect the court ruled: "I think that I could accept the findings of fact that they made there. So far as the recommendations are concerned, that is for the Court and that invades the province of the Court. So far as their findings of fact are concerned, and so on, I don't think that really controverts anything." So, in effect, the proffered testimony was considered by the trial court to the extent that it was entitled to any consideration. See Rothwell v. Love, 241 S.W.2d 893[4] (Mo.1951).

## II.

■ In discussing the sufficiency and weight of the evidence, the wife commences and attempts to anchor her argument throughout on the "tender year" presumption, under which a mother is deemed to be the one best able to care for a child of tender years, particularly if the child is a daughter. However, the wife in her brief correctly and commendably concedes that this presumption is only rebuttable, saying, "Appellant admits that this presumption is not conclusive and is at best rebuttable." Consequently the issue of who should be granted custody must be decided, not as a matter of law upon a presumption, but as a factual matter upon all of the evidence.

■ The wife also seeks to establish a legal defect in the husband's proof by contending that custody was awarded to her in June, 1976, and that no different award of custody should be made without a showing of a change of condition between June, 1976, and the time of trial in October, 1976. The major fallacy in this argument is that the custody award in June was merely a temporary order which was not even made upon the taking of evidence, as stated in the wife's brief, at the June hearing "the parties stipulated to the appellant getting temporary custody." In any event, the June order was not a "decree" within the meaning of Sec. 452.410 RSMo Supp.1973, which the wife erroneously contends to be applicable. Still further, even if it were

necessary to show a change of condition between June and October, 1976, a sufficient change occurred by reason of the wife withholding custody beyond the length of time allowed, in defiance of the court's June order. *R. L. S. v. J. E. S.*, 522 S.W.2d 5, l.c. 6 (Mo.App.1975) and cases there cited.

A detailed recital and analysis of all the unpleasant evidence would have no precedential value and would serve no other useful purpose. The entire record has received meticulous study. After considering that evidence even in light of the skillful argument by the wife's counsel which places that evidence on display to the wife's greatest possible advantage, we cannot say that the trial court's judgment is not supported by evidence nor conclude that it is against the weight of the evidence "with a firm belief that the decree or judgment is wrong." Therefore and because we find no error of law, under Rule 73.01–3 and the dictate of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), the judgment of the trial court must be affirmed.

All concur.