MELINDA ELLIS, Appellant, *v.* RODERIC A. CARUCCI, Respondent.

No. 43925

June 28, 2007                                         161 P.3d 239

*Karla K. Butko*, Verdi, for Appellant.

*Jack Sullivan Grellman*, Reno, for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider the circumstances under which a district court may modify primary physical custody of a minor child. In the past, this court has applied the two-prong test established in *Murphy v. Murphy* to determine when a modification of primary physical custody is appropriate.[1] Under the *Murphy* test, a modification is "warranted only when: (1) the circumstances of the parents have been materially altered; and (2) the child's welfare would be substantially enhanced by the change."[2] After *Murphy* was decided in 1968, however, the Legislature overhauled Nevada's child custody laws to focus solely on the best interest of the child.[3] In light of this legislative shift, we take this opportunity to revisit the

---

[1]84 Nev. 710, 711, 447 P.2d 664, 665 (1968).

[2]*Id.*

[3]*See, e.g.*, NRS 125.480(1).

*Murphy* test and now conclude that a modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the modification serves the best interest of the child. Applying the revised standard to this case, we perceive no abuse of discretion on the part of the district court in its decision to modify primary physical custody. Accordingly, we affirm the district court's order.

## *FACTS AND PROCEDURAL HISTORY*

In December 2000, respondent Roderic Carucci and appellant Melinda Ellis stipulated to a decree of divorce. This decree incorporated a paternity and child custody agreement between the parties and provided that Carucci and Ellis would share joint legal custody of their daughter, Geena, with Ellis having primary physical custody and Carucci having liberal visitation.

### *Carucci files a motion to modify custody*

In March 2004, Carucci filed a motion to modify primary physical custody, arguing that the circumstances warranted a change in custody because, among other things, Geena's school performance was in decline. After Carucci filed a second emergency motion to modify custody, the district court set the matter for a hearing.

At the hearing, Bridgett Banta, Geena's elementary school teacher, testified that Geena, an exceptionally bright student, performed very well during the first two quarters of the school year but had struggled during the third and fourth quarters. Banta explained, for example, that Geena's weekly progress reports between December 2003 and March 2004 included several notations indicating that Geena had failed to turn in homework and had been talking in class. Banta also testified that Geena's school performance had dropped significantly because she was not applying herself as she had in the past. According to Banta, Geena did not complete her assignments and refused to revise her work when Banta requested that Geena do so.

Banta further testified that she often discussed Geena's academic performance with Carucci because he regularly inquired about her progress, but, by contrast, Banta had very little contact with Ellis. In summary, Banta concluded that Geena's school performance had deteriorated and that she needed more encouragement from both parents.

Following Banta's testimony, the district court noted that it had concerns about Geena's school performance but concluded that the circumstances did not justify an emergency change in custody. As a result, the district court scheduled the matter for an evidentiary hearing. The parties agreed to perpetuate Banta's testimony so that

she would not need to testify again. In addition, the parties stipulated that Dr. Joann Lippert would conduct a family evaluation and submit a report to the district court.

The evidentiary hearing on Carucci's motion took place in July 2004, with Dr. Lippert, Carucci, and Ellis testifying.[4] Dr. Lippert testified regarding Geena's strong attachment to both of her parents and her desire to maintain a relationship with each of them. She also recommended that Carucci and Ellis share physical custody of Geena. In making her recommendation, Dr. Lippert noted that Geena's best interest would be served if both of her parents were actively involved in their daughter's education and were able to provide Geena with assistance and guidance.

Carucci testified that he met with Banta at least once every two weeks to discuss Geena's progress in school and frequently communicated with Banta through e-mail. Separately, Carucci asserted that because he and his new wife emphasize education, he believed they could best assist Geena in her studies.

Similarly, Ellis testified that she and her new husband often assisted Geena with her homework. Ellis also claimed that Geena's mood and academic performance had begun to decline in January 2004, and Ellis believed this decline was due to increased stress from her parents' ongoing custody disputes.

*The district court grants Carucci's motion to modify custody*

Following the evidentiary hearing, the district court entered a written order granting Carucci's motion to modify primary physical custody. In its order, the court determined that joint physical custody was in Geena's best interest and thus modified the custody arrangement so that Carucci and Ellis would alternate week-long custody of their daughter. The district court stated that Geena's school performance was the key substantial issue litigated and concluded that Banta's testimony that Geena's academic achievement had significantly slipped constituted sufficient evidence of changed circumstances to warrant a modification. The district court further concluded that Carucci was the parent most involved in Geena's education and, as a result, a modified arrangement allowing Carucci to become her joint physical custodian would serve Geena's best interest. In reaching its conclusion, the district court felt constrained by the *Murphy* test and found that, in this instance, the child's best interest was paramount. Ellis appealed the court's order.

## DISCUSSION

On appeal, Ellis contends that the district court abused its discretion by granting Carucci's motion to modify primary physical

---

[4]Dr. Lippert testified telephonically over Ellis's objection.

custody of their daughter because the evidence does not demonstrate a change in circumstances or that the modification would be in their daughter's best interest. We disagree.

## Standard of review

We have repeatedly recognized the district court's broad discretionary powers to determine child custody matters, and we will not disturb the district court's custody determinations absent a clear abuse of discretion.[5] However, the district court must have reached its conclusions for the appropriate reasons.[6] In reviewing child custody determinations, we will not set aside the district court's factual findings if they are supported by substantial evidence,[7] which is evidence that a reasonable person may accept as adequate to sustain a judgment.[8]

## Modification of child custody

In Nevada, when a district court determines the custody of a minor child, "the sole consideration of the court is the best interest of the child."[9] Under NRS 125.480(4), "[i]n determining the best interest of the child, the court shall consider and set forth its specific findings concerning, among other things . . . (g) The physical, developmental and emotional needs of the child." Although "the court may . . . [a]t any time modify or vacate its order" upon "the application of one of the parties,"[10] because numerous courts have documented the importance of custodial stability in promoting the developmental and emotional needs of children,[11] we acknowledge that courts should not lightly grant applications to modify child custody.

---

[5]*Rico v. Rodriguez*, 121 Nev. 695, 701, 120 P.3d 812, 816 (2005) (quoting *Primm v. Lopes*, 109 Nev. 502, 504, 853 P.2d 103, 104 (1993)).

[6]*Id.*; *Sims v. Sims*, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993).

[7]*Rico*, 121 Nev. at 701, 120 P.3d at 816.

[8]*Williams v. Williams*, 120 Nev. 559, 566, 97 P.3d 1124, 1129 (2004).

[9]NRS 125.480(1).

[10]NRS 125.510(1)(b).

[11]*See, e.g.*, *In re Stephanie M.*, 867 P.2d 706, 718 (Cal. 1994) ("In any custody determination, a primary consideration in determining the child's best interest is the goal of assuring stability and continuity."); *Delzer v. Winn*, 491 N.W.2d 741, 744 (N.D. 1992) ("Maintaining stability and continuity in the child's life is a very compelling consideration when determining child custody . . . . This is especially true when modification of custody is sought."); *Westphal v. Westphal*, 457 N.W.2d 226, 229 (Minn. Ct. App. 1990) (Minnesota law reflects "a settled policy view that stability of custody is usually in the child's best interest"); *Everett v. Everett*, 433 So. 2d 705, 708 (La. 1983) ("Stability and continuity must be considered in determining what is in the best interest of the child."); *see also Guardianship of N.S.*, 122 Nev. 305, 313,

We first recognized the importance of custodial stability in *Murphy v. Murphy*, where we concluded that ''change of custody is warranted only when: (1) the circumstances of the parents have been materially altered; and (2) the child's welfare would be substantially enhanced by the change.''[12] Since then, this court has consistently applied the *Murphy* test in determining whether the district court has properly granted a motion to modify primary physical custody. While the underlying premise behind the *Murphy* standard, which aims to promote stability by discouraging the frequent relitigation of custody disputes, still applies today, we conclude that the *Murphy* standard unduly limits courts in their determination of whether a custody modification is in the best interest of the child.[13] This is so, at least in part, because *Murphy* was decided in 1968, more than a decade before the Nevada Legislature amended NRS 125.480 and 125.510 to identify the ''best interest of the child'' as *the* primary concern in custody determinations. Accordingly, we take this opportunity to revisit the *Murphy* standard and now conclude that a modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the child's best interest is served by the modification.[14] Under

130 P.3d 657, 662 (2006) (concluding that the district court's analysis in the placement of a child should focus on whether the proposed plan will provide a stable, safe and healthy environment for the child).

[12] 84 Nev. 710, 711, 447 P.2d 664, 665 (1968).

[13] *See* NRS 125.480.

[14] *See id.*; *Selvey v. Selvey*, 102 P.3d 210, 214 (Wyo. 2004) (''A party seeking modification of the custody provision of a divorce decree bears the burden of demonstrating that: (1) a material and substantial change of circumstances affecting the child's welfare has occurred since the entry of the initial divorce decree, and (2) a modification is in the child's best interests.''); *Evans v. Evans*, 530 S.E.2d 576, 578-79 (N.C. Ct. App. 2000) (''Once the custody of a minor child is determined by a court, that order cannot be altered until it is determined (1) that there has been a substantial change in circumstances affecting the welfare of the child; and (2) a change in custody is in the best interest of the child.'' (citations omitted)); *accord Walker v. Walker*, 184 S.W.3d 629, 632 (Mo. Ct. App. 2006) (discussing Mo. Ann. Stat. § 452.410.1 and concluding that in proceedings to modify child custody ''[t]he burden is on the moving party to prove a substantial change has occurred and that a modification of custody is in the best interests of the minor children''); *Collins and Collins*, 51 P.3d 691, 693 (Or. Ct. App. 2002) (recognizing that because modifications of custody are disruptive to a child's life, ''the party moving for the change [must] demonstrate that (1) a change in circumstances has occurred since the most recent custodial order, and that (2) the modification will serve the best interests of the child''); *McKinnie v. McKinnie*, 472 N.W.2d 243, 244 (S.D. 1991) (''As a general rule, a parent seeking a change of custody must show 1) a substantial change of circumstances, and 2) that the welfare and best

this revised test, the party seeking a modification of custody bears the burden of satisfying both prongs.[15]

In reaching our conclusion, we overrule *Murphy* to the extent that it required a change in "the circumstances of the parents" alone, without regard to a change in the circumstances of the child or the family unit as a whole. We note, however, that under the revised test, there must still be a finding of a *substantial* change in circumstances. While the *Murphy* test is too restrictive because it improperly focuses on the circumstances of the parents and not the child, custodial stability is still of significant concern when considering a child's best interest. The "changed circumstances" prong of the revised test serves the important purpose of guaranteeing stability unless circumstances have changed to such an extent that a modification is appropriate. In determining whether the facts warrant a custody modification, courts should not take the "changed circumstances" prong lightly. Moreover, any change in circumstances must generally have occurred since the last custody determination because the "changed circumstances" prong "is based on the principle of res judicata" and "prevents 'persons dissatisfied with custody decrees [from filing] immediate, repetitive, serial motions until the right circumstances or the right judge allows them to achieve a different result, based on essentially the same facts.' "[16]

The second prong of the revised test acknowledges the legislative mandate that when making a child custody determination, "the

interests of the child require modification."); *see also Pecore v. Pecore*, 824 N.Y.S.2d 690, 692 (App. Div. 2006) ("It is well settled that '[a] modification of an established custodial arrangement will be granted only after a showing of a substantial change in circumstances warranting a change in order to [safeguard] the best interests of the child' " (internal quotation marks omitted)).

[15]*See* 2 Jeff Atkinson, *Modern Child Custody Practice* § 10-3 (2d ed. 2006); *Larson v. Larson*, 350 N.W.2d 62, 63 (S.D. 1984).

[16]*Castle v. Simmons*, 120 Nev. 98, 103-04, 86 P.3d 1042, 1046 (2004) (quoting *Mosley v. Figliuzzi*, 113 Nev. 51, 58, 930 P.2d 1110, 1114 (1997)). We note that there is at least one set of facts under which the "changed circumstances" prong does not apply: as we recently explained in *Castle v. Simmons*, a district court may consider evidence of domestic abuse that occurred before a previous custody determination, but which was unknown to the moving party or the court at the time of the prior determination. *Id.* at 105, 86 P.3d at 1047. Our decision today does not affect this exception to the "changed circumstances" prong of the custody modification test.

The parties do not raise, and we do not address, whether a party seeking modification of child custody must satisfy the "changed circumstances" prong when the original arrangement was based on an agreement of the parties. *See Larson*, 350 N.W.2d at 63.

sole consideration of the court is the best interest of the child,"[17] and not whether "the child's welfare would be substantially enhanced"[18] by the modification. This revision is significant because a modification of custody may serve a child's best interest even if the modification does not substantially enhance the child's welfare. In making a determination as to whether a modification of custody would satisfy the "best interest" prong of the revised test, courts should look to the factors set forth in NRS 125.480(4) as well as any other relevant considerations.

### Ellis's arguments against modification

On appeal, Ellis contends that substantial evidence does not support the district court's decision to modify custody. The district court concluded that the testimony of Geena's second-grade teacher, Bridgett Banta, demonstrated a sufficient decline in Geena's academic performance to constitute a substantial change in circumstances affecting her welfare. In addition, the district court found that the modification serves Geena's best interest by allowing her father more time to be involved in her education.

#### Substantial change in circumstances

At the hearing on Carucci's emergency motion to modify custody, Banta testified that Geena's academic preparation and performance had slipped while in Ellis's primary care. Banta based her opinion of Geena's academic performance on a daily in-class observation of Geena's declining effort and preparation. Although the evidence concerning the seriousness of Geena's academic problems was conflicting, we leave witness credibility determinations to the district court and will not reweigh credibility on appeal.[19]

While this case presents a close question, Banta's testimony constitutes substantial evidence in support of the district court's finding that a change in circumstances affecting Geena's welfare warranted a modification of child custody. We perceive no abuse of discretion on the district court's part in determining that Geena's documented 4-month slide in academic performance constituted a substantial change in circumstances.

#### Child's best interest

Ellis also argues that Carucci presented no evidence demonstrating that a modification of custody was in Geena's best interest.

[17]NRS 125.480(1).

[18]*Murphy*, 84 Nev. at 711, 447 P.2d at 665.

[19]*Castle*, 120 Nev. at 103, 86 P.3d at 1046.

Ellis's argument, however, disregards Banta's and Carucci's testimony regarding Carucci's involvement with Geena's education. As the district court acknowledged, "the evidence clearly portrayed Mr. Carucci as the parent most connected to and involved with Geena's school, even as the non-custodial parent." Moreover, Dr. Lippert testified that Geena's best interest would be served if both of her parents were actively involved in their daughter's education and were able to provide Geena with assistance and guidance. Because parental involvement in a child's education is certainly in the child's best interest, we conclude that substantial evidence supports the district court's finding that a modification granting Geena's father joint physical custody served her best interest.

## CONCLUSION

A modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the modification would serve the child's best interest. In this case, the testimony before the district court regarding Geena's decline in school performance supports the court's conclusion that both of these elements were satisfied. Thus, the district court did not abuse its discretion when it determined that a modification of custody was warranted. Accordingly, we affirm the judgment of the district court.[20]

MAUPIN, C. J., GIBBONS, HARDESTY, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[20]We have considered Ellis's remaining arguments and we conclude that they are without merit.