An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

PAUL JON PENA,
Appellant,
vs.
NICHOLE PENA, NOW KNOWN AS
NICHOLE KEMPER,
Respondent.

No. 62504

**FILED**

SEP 2 4 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### *ORDER OF AFFIRMANCE*

This is an appeal from a post-divorce-decree district court order modifying child custody and awarding primary physical custody to respondent. Sixth Judicial District Court, Humboldt County; Michael Montero, Judge.

Appellant Paul Jon Pena and respondent Nichole Kemper divorced in 2004, and Pena was awarded primary physical custody of the couple's two minor children in 2005. When Pena was deployed to Iraq in 2010, he sent the children to live with Kemper in Winnemucca, Nevada. Upon returning from his deployment, Pena tried but failed to have the children returned to him, and Kemper filed a motion to modify the custody of the children. The district court subsequently awarded primary physical custody to Kemper. Pena now appeals.

For the reasons stated below, we conclude that the district court (1) did not base its determination solely on Pena's military deployments and thus did not contravene NRS 125C.150, and (2) did not abuse its discretion in awarding custody to Kemper.

*The district court did not improperly disregard NRS 125C.150*

Pena contends that NRS 125C.150 precludes the district court from considering his military deployments or their effects in determining if a substantial change in circumstances warranted a modification of

SUPREME COURT
OF
NEVADA

(O) 1947A

14 - 31663

custody. NRS 125C.150's meaning, scope, and application to the district court's custody determinations are issues of law that we review de novo. *Arguello v. Sunset Station, Inc.*, 127 Nev. ___, ___, 252 P.3d 206, 208 (2011).

NRS 125C.150 states: "Deployment or the potential for future deployment must not, *by itself*, constitute a substantial change in circumstances sufficient to warrant a permanent modification of a custody or visitation order." NRS 125C.150 (2011) (repealed 2013) (emphasis added). In interpreting NRS 125C.150, the ultimate goal is to effectuate the Legislature's intent. *See Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). In so doing, clear and unambiguous statutes are interpreted based on their plain meaning. *Id.*

Pena exaggerates NRS 125C.150's scope and meaning. He reads the statute as barring a district court from considering military activity and its effects on the children. NRS 125C.150's language does not support this interpretation. It states that deployment "*by itself*" cannot be the basis for finding a substantial change in circumstances. NRS 125C.150 (2011) (repealed 2013) (emphasis added). Thus, NRS 125C.150 permits the consideration of deployment or its effects, so long as deployment is not the district court's *sole* consideration when making a substantial-change-in-circumstances determination. To construe the statute as Pena does would require a district court to ignore all matters that occur during deployment, even those affecting a child's well-being. The plain meaning of this statute does not suggest that the Legislature intended for the absurd result of a district court closing its eyes to all other events that affect a child. *See City Plan Dev., Inc. v. Office of Labor*

*Comm'r*, 121 Nev. 419, 435, 117 P.3d 182, 192 (2005) (providing that this court avoids interpretations that reach absurd results).

Furthermore, NRS 125C.150 applies to instances of "deployment," which is defined as "the transfer or reassignment of a member of the military, unaccompanied by any family member, on active duty status in support of combat or another military operation, including, without limitation, temporary duty." NRS 125C.110 (2011) (repealed 2013). Thus, the statute permits the district court to consider other aspects of military service, such as transfers between bases within the United States that cause the military parent's children to be relocated. *See id.*

Here, as we explain below, the district court did not rely solely on Pena's prior deployment or potential future deployments in making its custody determination. Therefore, NRS 125C.150 was not implicated in this case. Since NRS 125C.150 was not violated, we will review Pena's claim that the district court abused its discretion in granting primary physical custody to Kemper.

*The district court did not abuse its discretion by granting Kemper's motion to modify custody*

We review child custody determinations for an abuse of discretion. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241 (2007). We do not disturb a district court's "factual findings [when] they are supported by substantial evidence, which is evidence that a reasonable person may accept as adequate to [support the result]." *Id.* at 149, 161 P.3d at 242 (citation omitted). "[A] modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the child's best

interest is served by the modification." *Id.* at 150, 161 P.3d at 242. Both prongs of this test must be satisfied for the modification to occur. *Id.* at 150-51, 161 P.3d at 242-43.

*The evidence was adequate to support the district court's finding of a change in circumstances*

To be relevant to a substantial-change-in-circumstances determination, "any change in circumstances must generally have occurred since the last custody determination." *Ellis*, 123 Nev. at 151, 161 P.3d at 243. Custody should not be modified if the circumstances that existed at the time of the last custody order are the same. *Mosley v. Figliuzzi*, 113 Nev. 51, 58-59, 930 P.2d 1110, 1115 (1997).

Around the time that the 2005 custody order was entered, the district court observed that Kemper lacked stable employment and resided in low-income housing. Since that time, Kemper remarried, started a career at a bank, and bought a five-bedroom home in Winnemucca that she intends to reside in indefinitely. Kemper and Pena's minor children now reside in Kemper's custody in Winnemucca and have developed good relationships with their younger half-siblings, stepfather, and friends.

While other jurisdictions have held that a change of circumstances of a noncustodial parent is *not* sufficient to warrant a modification in custody, *see, e.g., Lloyd v. Butts*, 37 S.W.3d 603, 607 (Ark. 2001), Nevada has not adopted this position. *See Ellis*, 123 Nev. at 151, 161 P.3d at 243 (holding that a change in the circumstances of the child or the family unit as a whole is considered in making a change of circumstances determination). While the dissent advocates adopting such a rule, here the outcome would still be the same. The district court did not rely solely on Kemper's improved circumstances in its decision. It also

relied on the fact that at the time Kemper filed her motion for a modification of custody, the minor children had been in Kemper's sole care in Winnemucca for eighteen months, where they had adapted to their new school and living situation. This was a substantial change in circumstances from the last custody determination in 2005, when the children were in the primary physical custody of Pena and living and attending school wherever he was stationed. We therefore hold that because there was substantial evidence to support the district court's finding of a substantial change of circumstances affecting the children's welfare, the district court did not abuse its discretion.

*The evidence was adequate to support the district court's finding that the change in custody was in the best interests of the children*

The primary consideration in custody matters is the child's best interest. *Ellis*, 123 Nev. at 151-52, 161 P.3d at 243. In making this determination, the district court must consider all relevant matters in addition to the factors listed in NRS 125.480(4). *Id.* at 152, 161 P.3d at 243. The consideration of these matters is a "balancing test[ ]" where the district court "weigh[s] each factor that may affect" the child. *Rico v. Rodriguez*, 121 Nev. 695, 701, 120 P.3d 812, 816 (2005). The district court has broad discretion in determining a child's best interest. *Primm v. Lopes*, 109 Nev. 502, 504-05, 853 P.2d 103, 104-05 (1993).

Here, the district court considered evidence that the children had developed good relationships with each other, their half-siblings, their stepfather and mother, and their friends in Winnemucca. Kemper presented reliable evidence that she and her husband were attentive parents. The oldest child, who was 15 at the time of the district court's determination, expressed a desire to remain in Winnemucca, while the

younger child expressed an interest in being with both Kemper and Pena. The district court also concluded that it would not be in the children's best interests to split them between their parents.[1]

In light of the evidence considered by the district court, we hold that a reasonable person could conclude that the evidence was sufficient to support the district court's determination that it would be in the best interests of the children to grant Kemper primary physical custody. *See Ellis*, 123 Nev. at 149, 161 P.3d at 242.

*Conclusion*

Since the district court did not base its determination solely on Pena's deployment, it did not erroneously disregard NRS 125C.150. Furthermore, there was substantial evidence to support the district court's finding that a change in circumstances occurred and that the children's

---

[1]Though we review best-interest-of-the-child determinations for an abuse of discretion, *Ellis*, 123 Nev. at 149, 161 P.3d at 241, the dissent inappropriately reweighs the facts for itself. *See Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 124 Nev. 272, 277 n.14, 182 P.3d 764, 767 n.14 (2008) (holding that we will not reweigh evidence when reviewing a district court's exercise of discretion). It relies heavily on its own interpretations of evidence that, when taken out of context, suggest that the district court abused its discretion. For instance, there was evidence that many of the school absences related to a period of hospitalization of Kemper, a single family trip, and the proclivity of the older child to be late to individual classes during the school day, which were counted as full absences. Likewise, there was evidence presented that it was the children's choice to occasionally speak to Pena on speaker phone and that during this time the minor daughter had her own cell phone on which Pena could call her without going through Kemper.

best interests were served by being in the primary physical custody of their mother. Therefore, we hold that the district court did not abuse its discretion in modifying custody in favor of Kemper. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Saitta

cc: Hon. Michael Montero, District Judge
Carolyn Worrell, Settlement Judge
Kyle B. Swanson
Jack T. Bullock, II
Humboldt County Clerk

PICKERING, J., with whom DOUGLAS, J., and CHERRY, J., agree, dissenting:

To promote stability and continuity in the life of children and to discourage parents' repeated litigation of previously tried issues, a Nevada court may only modify a foreign court's custody order where there has been a substantial change in circumstances that affects the welfare of a child in question since the original custody order issued, and the modification would be in the child's best interests. *See Ellis v. Carucci*, 123 Nev. 145, 146-47, 161 P.3d 239, 240 (2007). The first prong of this test is based on preclusion principles, and thus district courts that consider motions for custodial modifications are duty bound to stringently enforce it, *see id.* at 151, 161 P.3d at 243, and it is incumbent on this court to ensure that "the district court . . . reached its conclusions for the appropriate reasons" on review. *Id.* at 149, 161 P.3d at 241-42.

Here, the district court judge found that the circumstances of the Pena children had substantially changed and cited four facts in support of that conclusion: (1) the children's enrollment in Humboldt County schools from January 2010 to August 2012 was "the longest continuous period of time in which the children have attended school in the same school district"; (2) Paul's decision to reenlist in the military had resulted in his being "at risk for future transfers of duty stations and deployments" and the children's "transfers from school to school"; (3) Nichole had "made substantial changes in her life" such that she could now provide the children with "a stable home with sufficient space; [half] siblings to share life with, [and] a healthy step-father and mother relationship for guidance"; and (4) the older of the two children had laid down roots in Winnemucca and expressed a desire to stay. I cannot agree

with my colleagues in the majority that these findings were legally sufficient to support the district court's conclusion that the circumstances of the Pena children had changed sufficiently to warrant a change in the children's custody from the father to the mother.

The first finding, that the children had been enrolled in Humboldt County schools for "the longest continuous period of time" they had ever been enrolled in any district, was, according to the district court, a "substantial factor" in its determination. This finding apparently stemmed from Nichole's testimony that "[t]his is the longest [the children have] been in the same schools—or same city of schools." But Nichole qualified this assertion—"From what I understand, if my years are right, for when they were in Louisiana, I'm not really sure the exact amount of time that they were there, but, yeah"—and provided no supporting documentation. All else aside, Nichole's testimony was probably not sufficient to sustain the finding. *See Ellis*, 123 Nev. at 149, 161 P.3d at 242. And the remainder of the record actually belies the court's finding inasmuch as Paul testified without equivocation, and provided school records demonstrating, that the children had previously been enrolled in the Waynesville, Louisiana, school district from 2004 to 2008, two years longer than they had at that time attended Winnemucca schools. Thus, this finding was in error and could not properly support the district court's legal conclusion. *See id.*

As to the second finding, the district court's decri al of the effects of Paul's military career as a change in the family's circumstances, this was also erroneous—Paul's career in the military, the risk of reassignment and deployment that accompanied it, and his transfers from base to base all *preceded* the original Texas order awarding him primary

physical custody of the children and continued after it, though Paul presented evidence that the likelihood of his additional transfer or deployment had decreased significantly since his original enlistment. Moreover, even if it were a change in circumstances, it was not a change that negatively *affected the welfare* of the children as *Ellis* requires. *See id.* at 147, 161 P.3d at 240. The children's grades and school attendance were far better when they were in their father's custody—despite their various transfers—than they have been in Winnemucca. Moreover, as a result of Paul's continued military career, the children have had access to quality health coverage and will soon be eligible for other benefits associated with Paul's impending retirement, not the least of which being the G.I. Bill, which will help cover their college expenses.

With regard to the positive changes in Nichole's life, specifically that she now holds down a job, has moved out of "low income housing," and recently purchased a home that she and the children share with her third husband and the children's three half-siblings, they cannot justify the district court's legal conclusion; a change of circumstances of the *noncustodial parent* should not be sufficient to warrant a modification in custody. *See Lloyd v. Butts*, 37 S.W.3d 603, 607 (Ark. 2001). This is logical where, as here, it appears that the custodial parent has always provided a similarly stable environment for the children because, though the changed circumstances are an overall "plus" for the children, they do not impact the children's welfare in terms of their current custodial arrangement. *See Schuchmann v. Schuchmann*, 768 So. 2d 614, 618 (La. Ct. App. 2000); *Considine v. Considine*, 726 S.W.2d 253, 255-56 (Tex. App. 1987). Indeed, public policy mandates this result, else the parent who—it should be said, laudably—changes his or her circumstances from jobless

 

and homeless to employed and property-owning could always satisfy the "changed circumstances" prong, thus rewarding a parent for his or her prior lack of fitness. It is therefore no surprise that a *majority* of jurisdictions so hold. *See* 2 Jeff Atkinson, *Modern Child Custody Practice* § 10-8 (2d ed. 2013) (collecting cases).

This leaves only the district court's fourth finding supporting its conclusion that the Pena children's circumstances had changed; to wit, that the older daughter now expressed a desire to stay with her mother in Winnemucca while the younger son ultimately asked to return to Texas with his father. This may be a change in circumstances—perhaps, prior to the original custody proceeding or Paul's most recent deployment both his children wanted to stay in Texas—though the only evidence supporting that this was a *change* in the children's preferences was Nichole's response to the compound question, "And why when he got back from his deployment did you not feel it appropriate for the kids to go back to him? What had changed, if anything?" that, "They [the children] didn't want to go." In that Nichole could have intended to explain *either* why she did not "feel it appropriate" to return the children to their father—despite the Texas court order so requiring—*or* what circumstances had changed, the district court's factual finding was probably not sufficiently supported. And in any case, it is not clear that such a change would affect the welfare of the children so as to justify seating custody with the children's mother given that one of the children also expressed a desire to stay with their father.

This is especially so given that the daughter's preference for remaining with Nichole was, at least according to Nichole, based on the friendships the daughter had formed in Winnemucca during Paul's

deployment and after Nichole—in knowing violation of a Texas court order—retained physical custody of the children following his return. As to the supposed change in the daughter's preferences that developed during Paul's deployment, it is unclear whether NRS 125C.150—which was enacted at the time of the district court's custodial hearing and mandated that "[d]eployment or the potential for future deployment must not, by itself, constitute a substantial change in circumstances sufficient to warrant a permanent modification of a custody or visitation order"— prohibited consideration of such effects of a parent's deployment, and to the extent that the majority impliedly assumes that the statute allowed a court to consider the roots a child puts down during a parent's military deployment in changed circumstance analysis, it should have said so via published opinion. In any case, that the Pena daughter has set down roots in Winnemucca cannot by itself be a "substantial" change so as to warrant custodial modification; it is to be expected, indeed desired, that a child will make friends and settle in while his or her parent is deployed, and if such facts were alone sufficient to warrant a modification in custody, a deployed parent could always face a modification hearing upon his or her return. Inasmuch as service members who fear losing custody of their children will be unable "to devote their entire energy to the defense needs of the Nation," *see* 50 U.S.C. app. § 502 (2012), this result runs counter to public policy; every enlisted parent would have cause for distraction. Further, to the extent that the daughter's Winnemucca friendships deepened during Nichole's wrongful retention of the children, our prior case law should have cautioned the district court from allowing that to factor into its decision-making. *Cf. Vaile v. Eighth Judicial Dist. Court*, 118 Nev. 262, 278, 44 P.3d 506, 517 (2002).

Thus, the record evidence supporting the district court's finding of substantially changed circumstances is scant, to say the least, though the bar for demonstrating changed circumstances is high. *See Ellis*, 123 Nev. at 151, 161 P.3d at 243. And, even assuming that the district court properly found that circumstances had substantially changed since the original custody proceeding so as to potentially warrant a custody modification, it needed to make an additional finding that the children's best interests were served by the modification. *Id.* at 151-52, 161 P.3d at 243. Though the district court concluded "that [Nichole] ha[d] met her burden of proof establishing that the best interests of the children would be served by the change of custody," it failed to describe in any greater detail how it reached that conclusion, and, given the record, I decline to infer, as a majority of this court does, that the district court properly exercised its discretion in this regard.

As noted, the children's grades had dropped dramatically, and with them their prospects for higher education; this downward trend was, perhaps, reflective of their parents' respective values in that while Paul labored on to retirement in order to provide his children the opportunity to attend college, Nichole was apparently resigned to her children's poor scholastic performance, testifying that her son simply "gave up" on his studies, her daughter was "sidetracked" and impossible to get back on course, and that if the children "wanted to grow up to be a street sweeper" or a "cosmetologist," she was "okay with that" because she "[didn't] expect [them] to go to law school or be a doctor." While such academic and career choices are perfectly acceptable for adults to make for themselves, where children are capable of attaining above-average grades—which the record demonstrates these children are—their best interests are served by

encouraging them to attain those grades so that, if their life takes a different direction than they expect at ages 11 and 15, there are other opportunities open to them. *See Ellis*, 123 Nev. at 153, 161 P.3d at 244; *cf. Frueh v. Frueh*, 771 N.W.2d 593, 599 (N.D. 2009) (noting with concern a child's lack of interest in his education).

Grades aside, the children had significant behavioral problems, both in and out of school. The daughter had 70 unexcused absences from her high school classes in one semester, the son 15, and Nichole had been warned, as to both children, that their absences were excessive so as to put them at risk of repeating a grade level. The daughter served four in-house suspensions in one semester for her attendance and dress code violations, her identity as a repeat dress code offender so familiar to the school authorities that the notes for one of those disciplinary notices stated simply: "[Minor daughter's] shorts were too short again today." And, the police had contacted Nichole to inform her that her then 13-year-old daughter was linked romantically to a 19-year-old male who was being charged with statutory seduction for possessing sexualized images of other minor girls on his phone. What is more, by Nichole's own admission, this relationship continued for at least four months following the police visit.

Further, the living situation Nichole provides for the children, though apparently improved from the housing in which she had previously resided, remains questionable. The house is large—3,600 square feet— and the children have their own rooms. But, they have also shared the home, at different times, with different young males who are unrelated to them, a matter that is particularly troubling given the daughter's romantic proclivities. And added to this are Nichole's repeated health

problems—a recent stroke and the removal of her thyroid and gallbladder. Weighing even further against placing the children with their mother is her admitted disregard for the Texas court's custody order and that she only permits the children to converse with their father on speakerphone. *See In re Marriage of Kramer*, 570 N.E.2d 422, 428 (Ill. App. Ct. 1991); *Kirk v. Iowa Dist. Court*, 508 N.W.2d 105, 110 (Iowa Ct. App. 1993); *cf. In re Marriage of H.B.*, 559 S.W.2d 73, 75-76 (Mo. Ct. App. 1977).

In sum, even if the district court found that the Pena children's circumstances had changed, its determination that the children's best interests were served by the modification is not, in my view, supported. I am also concerned that Paul is paying an unfair price for his military service and Nichole's refusal to return the children to him after he returned from Iraq, a refusal that, however well-meaning, violated the existing Texas custody order and the parties' agreement. Certainly, and in any case, if this court's deference in the context of child custody is so abject that this record is sufficient to support the district court's conclusions—despite that at least three of its four factual findings supporting changed circumstances were erroneous and that it failed to even specify the factual bases for its best-interests determination—the majority should have published an opinion so stating. Accordingly, I dissent.

_____, J.
Pickering

We concur:

_____, J.
Douglas

_____, J.
Cherry