IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 26, 2017 Session

## RAYMOND CASS BALLARD v. GERTRUDE CAYABAS

**Direct Appeal from the Chancery Court for Dyer County**
**No. 10-CV-195     Tony Childress, Chancellor**

---

### No. W2016-01913-COA-R3-CV

---

Father filed a petition to change primary residential parent and for civil and criminal contempt.  Because there was no material change of circumstance that affected the well-being of the child, we affirm the trial court's dismissal of Father's petition.  We also affirm the trial court's decision not to find Mother in civil contempt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, J.J., joined.

John Edward Eldridge, Knoxville, Tennessee, for the appellant, Raymond Cass Ballard.

Vanedda Prince Webb, Dyersburg, Tennessee, for the appellee, Gertrude Cayabas.

### OPINION

This appeal arises out of a petition to change the primary residential parent and a petition for civil and criminal contempt.  In a prior opinion, we determined that the appeal of the finding of criminal contempt was untimely. We previously remanded the matter to the trial court "for the limited purpose of conducting an evidentiary hearing regarding the timeliness of this appeal.  On remand, the trial court entered "Findings of Fact, Conclusions of Law and Order" stating that the Father's notice of appeal was timely received by the trial court clerk. For inexplicable reasons, the trial court clerk did not stamp the notice of appeal as filed on the day it was received by his office. No additional transcripts were provided to this Court after our remand.  Nonetheless, based on the trial court's factual finding, albeit apparently without the evidentiary hearing required by our remand, we have determined that the notice of appeal with respect to civil contempt and the petition to modify the parenting plan and parenting schedule is timely.  Therefore, we

proceed to address the merits of this appeal.

Gertrude Cayabas ("Mother") and Raymond Cass Ballard ("Father") are the parents of a son ("the Child"), who was born in 2008. At the time of the parties' divorce in October 2011, Mother was named the Child's primary residential parent in the permanent parenting plan. In July 2015, Father filed a petition for civil contempt, criminal contempt, and modification of the permanent parenting plan, asking to be named primary residential parent. The trial court conducted a hearing on Father's petition on July 20 and 21, 2016.

Father's petition raises a series of factual scenarios, which were largely undisputed at trial, upon which he relies to seek a contempt finding against Mother; in addition, Father maintains that these facts warrant a change in the Child's primary residential parent from Mother to Father. First, Mother took the Child to New Mexico, during which trip the Child was baptized without Father's knowledge or consent. Second, Mother obtained dental insurance for the child without consulting with Father and, relatedly, rescheduled a dental appointment for the Child without consulting with Father. Third, Mother failed to provide an itinerary for out of state travel with the Child, as required by the parenting plan, on at least two occasions. Fourth, Mother has failed to pay her half of the co-pays associated with the Child's medical visits on a number of occasions. With respect to the failure to pay the co-pays, Father sought a civil contempt finding against Mother, which the trial court denied. Father also alleged that Mother's failure to follow the permanent parenting plan was a material change in circumstance warranting a change in the primary residential parent. The trial court likewise declined to modify the parenting plan.

## ISSUES PRESENTED

Father raises the following pertinent issues on appeal[1]:

1.      Whether it was in the Child's best interest to change the primary residential custodian from the Mother to the Father?

2.      Whether the trial court erred in not adopting the Father's proposed permanent parenting plan, as the Mother did not file one?

---

[1]On appeal, Father also sought to have this Court review the trial court's criminal contempt findings and the trial court's denial of Father's attorney's fees associated with the criminal contempt. In our previous opinion on this case (June 8, 2017), we determined that Father's notice of appeal on the issue of criminal contempt was not timely filed. Thus, any issues regarding Mother's criminal contempt or Father's attorney's fees associated therewith are waived.

3.     Whether the trial court erred in not holding the Mother in civil contempt?

**STANDARD OF REVIEW**

"In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (citing Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). We review a trial court's determinations on issues of law *de novo* without any presumption of correctness. *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

Appellate courts afford trial courts "considerable deference" when reviewing issues that hinge on witness credibility because trial courts are able "to observe the demeanor and conduct of witnesses." *Kelly*, 445 S.W.3d at 692. "Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Id.* (citing *Armbrister*, 414 S.W.3d at 693). "[C]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," and we are reluctant to second-guess those decisions on appeal. *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012). As a result, "trial courts have broad discretion in determining which parent should be the primary residential parent[.]" *In re Shayla H.,* No. M2013-00567-COA-R3-JV, 2014 WL 2601564, at *5 (Tenn. Ct. App. Jun. 9, 2014) (*no perm. app. filed*) (citing *Reinagel v. Reinagel*, No. M2009-02416-COA-R3-CV, 2010 WL 2867129, at *4 (Tenn. Ct. App. July 21, 2010); *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *2 (Tenn. Ct. App. Feb. 28, 2007)). Thus, "the ultimate question as to who should be the primary residential parent on appeal is whether the trial court abused its discretion in its selection." *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013) (citing *K.B.J. v. T.J.*, 359 S.W.3d 608, 613, 616-17 (Tenn. Ct. App. 2011)). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Kelly*, 445 S.W.3d at 692 (quoting *Armbrister,* 414 S.W.3d at 693). If "reasonable minds can disagree as to [the] propriety of the decision made," the trial court's ruling will be upheld. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

**DISCUSSION**

**1.      Father's request to change primary residential parent.**

A custody decision is considered res judicata as to the facts in existence when the decision was made. *Armbrister*, 414 S.W.3d at 698-99. "Res judicata is a rule of rest, which promotes finality, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* at 698 n.15 (internal quotations omitted). Simply put,

> if either party, as often as he chose, could relitigate the question of custody or support upon the same evidence and the same facts, great would be the inconvenience to the litigants, the courts, and the public; and any trial of the issues would be but an idle ceremony, since it would settle nothing.

*Id.* at 699 (quoting *Hicks v. Hicks*, 176 S.W.2d 371, 375 (Tenn. Ct. App. 1943)). In order to balance the interests in finality and stability against the practical reality that changes may occur after the initial custody decree which necessitate modification, courts have required a party seeking to modify a custody decision to first prove that a material change in circumstance has occurred since the prior decree. *Id.* (citing *Ellis v. Carucci*, 123 Nev. 145, 161 P.3d 239, 243 (2007) (recognizing that the concept of material change in circumstances derived from the doctrine of res judicata and was intended to prevent litigants dissatisfied with custody decrees from filing immediate, repetitive, serial motions in the hope of achieving a different result, based on essentially the same facts)). Tennessee Code Annotated section 36-6-101(a)(2)(B) provides: [2]

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

In sum, when assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstance has occurred and then engage in

---

[2]A different standard applies when a litigant seeks modification of a residential parenting schedule but not the designation of primary residential parent. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C). It is "easier to establish that a material change in circumstances has occurred" when a party seeks to modify only the residential parenting schedule. *Armbrister*, 414 S.W.3d at 703.

a best interest analysis. *Armbrister,* 414 S.W.3d 685, 697-98. "When presented with a request to modify a parenting arrangement, the existing arrangement is generally favored, based on the premise that children tend to thrive in a stable environment." *Wall v. Wall*, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *21 (Tenn. Ct. App. July 14, 2011) (citing *Aaby v. Strange*, 924 S.W.2d 623, 627-28 (Tenn. 1996); *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 2001)). Accordingly, "there is 'a strong presumption in favor of continuity of placement' of a child." *Id.* (quoting *Aaby*, 924 S.W.2d at 627). "A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister,* 414 S.W.3d at 692-93 (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates against the findings. *Id.* at 693.

As this Court has explained, while there are no bright line rules for determining when a change in circumstances warrants a change in the primary residential parent,

> the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way."

*Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002) (citing *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)).

In this case, the trial court's July 27, 2016 "Order on Petition for Civil Contempt and Modification" merely states that "[Father's] petition to modify the current parenting plan is denied." However, the trial court also entered another "Order" on July 27, 2016, attaching its findings of fact and conclusions of law and incorporating by reference the transcript of the trial court's oral ruling. After making numerous findings of fact, the trial court expressed its conclusions of law with respect to the modification as follows:

> I'm not going to go through all the standards, all the elements, I'm just going to go ahead and tell you I considered the standard that's set forth in Tennessee Code Annotated 36-6-101(a)(2), the correct standard, not the standard that deals with the modification of parenting schedule, but the standard that deals with the modification of the custody. And then I considered all the standards set forth in the Supreme Court case of <u>Kendrick v. Shoemake</u> and all the cases that have followed that. This is something that [Mother] cannot get past. It's unrefuted. And that's the fact

5

that she has violated the permanent parenting plan order. And she has. And that was also something that the Court could not have anticipated when that order was entered. The Court always expects people to comply with the Court's orders.

The parts of the order that [Mother] violated, they were clear, they were unambiguous. And this Court considers all violations of its orders very seriously. All court[s] do. That's why the [court] has the power of contempt at its disposal. And as far as the violation of the [parenting plan] go, the one that upsets this Court the most and the Court thinks is the most serious are the events surrounding the baptism. Now, it was not the baptism itself. Instead, it was [Mother's] failure to notify [Father] that the baptism was going to occur. This deprived him of the opportunity for him to participate in this important religious event. It also deprived him of allowing his family to have the opportunity to participate in this event. This baptism, however, occurred in October of 2012, which was nearly four years ago. And today this child is doing all the things and is in all the shapes that I discussed earlier in my findings. I mean, he's a good kid. He's doing well, he's excelling. He's well-rounded. I'm not going to go through it all again. But we want all kids to be like he is.

Now, did [Mother] not telling [Father] and him not being allowed to be present at the baptism upset [Father]? Yeah, sure did. Did [Mother's] failure to comply with the Court's order make this Court upset? Yeah, sure did. And I punished her for those offenses. **However, what I've got to look at is how have these violations – and I'm talking about all of them now – affected this child's well-being in a meaningful way. How has it affected him? I've already laid out all the things that [the Child] is. And I'll just go ahead and tell you that I'm still seeking an answer to that last question. And it's an answer the movant in these types of cases has to establish by the required standard of proof.**

Now, there have been violations of this parenting plan. And there's also a consideration of, if there's a violation of a parenting plan, even though it is a simple – not a simple violation. Any violation is not simple. It's serious. **And there's a thought that, if you've got a violation of a parenting plan that's not followed, that, that in and of itself, is a material change in circumstance and you can modify the parenting plan if you establish the modification is in the best interest of the child.** In this case this parenting plan has been in effect since 2011. And the schedule that the parents are under right now is the schedule they were following even before that. I mean, it's a schedule that has been in place for years.

Now, does [Father] want to spend more time with his son? I mean,

of course, he does. I mean, he's a good dad, he's a good father, he's a good influence. That's why the Court has given him as much time as it has. I think he's a positive person in this child's life. I mean, he brings positive people into the child's life. I mean, like I said, [the Child] is lucky.

Now, be that as it may, what I have to look at is has it been established that changing the current parenting plan is in the best interest of this child. And I just don't see – it hadn't been established to me that changing the parenting plan that's been in effect at least for the last few years is in the best interest of this seven-year-old child at this time. So, I'm going to respectfully deny the petition to modify.

(Emphasis added.) While the trial court clearly determined that Mother violated the parenting plan, the trial court did not specifically determine that the violations affected the Child's well-being in a meaningful way. In fact, the testimony at trial supported the trial court's conclusion that the Child is intelligent, affectionate with both parents, polite, well-mannered, excelling in school, and well-rounded socially. Without evidence that the violations of the parenting plan affected the Child's well-being in a meaningful way, the trial court's best interest analysis was unnecessary. Given the facts found by the trial court, which are supported by the evidence presented at trial, Father failed to prove that Mother's violations of the parenting plan affected the Child's well-being in a meaningful way. As such, we affirm the trial court's denial of Father's petition to modify the parenting plan.

### 2. Mother's failure to file a proposed parenting schedule.

Father also argues on appeal that the trial court erred by not adopting Father's proposed parenting plan, since Mother did not file one. In support of his argument, Father relies on Tennessee Code Annotated section 36-6-405(a), which provides: "[i]n a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification."

While Tennessee Code Annotated section 36-6-405 does require a proposed parenting plan be filed with the response to the petition for modification, section 36-6-404(c)(3) provides that "[f]ailure to [file and serve a proposed permanent parenting plan] . . . may result in the court's adoption of the plan filed by the opposing party if the court finds such plan to be in the best interests of the child." The trial court in this case determined that the existing parenting plan and schedule "was working well for [the Child" and therefore declined to alter the existing plan. The trial court did not err in this regard.

### 3. Father's request for civil contempt.

Father's petition also included a request that the trial court find Mother in civil contempt as a result of her alleged failure to pay her half of deductibles, co-pays, or other medical expenses not covered by insurance. The trial court determined that Mother did, in fact, owe Father "$100.35 for her pro rata share of the uncovered medical expenses." The trial court declined to hold Mother in civil contempt, however, because Father failed to establish that Mother had the ability to pay that amount on the day of trial.

As we have stated previously:

> An action for civil contempt is brought to enforce private rights when a party refuses or fails to comply with a court order. *Black v. Blount, III*, 938 S.W.2d 394, 398 (Tenn. 1996). The primary purpose of civil contempt sanctions, which may include imprisonment, is to compel the contemnor to comply with the court's order. *Doe v. Bd. of Prof'l Responsibility of Sup. Ct. of Tenn.*, 104 S.W.3d 465, 473-74 (Tenn. 2003); [*Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)]. Thus, sanctions for civil contempt are remedial and coercive in character. The contemnor, who must have the ability to comply at the time of the hearing, can purge the contempt by complying with the court's order. *Ahern*, 15 S.W.3d at 79.

*Thomas v. Miller*, No. M2013-04185-COA-R3-CV, 2015 WL 899421, at * 7 (Tenn. Ct. App., Feb. 27, 2015).

The record before us does not preponderate against the trial court's finding that Mother did not have the ability to comply on the date of the hearing. Father urges us to assume that "[t]he fact that [Mother] was in court, with counsel, had paid an attorney fee, and had a steady job and paid all of her other bills is clear proof that she had the present ability to pay." However, after a thorough review of the transcript, we can find no evidence presented to the trial court to establish that Mother had the ability to comply at the time of the hearing. Without this element of proof, the trial court was correct in denying Father's request for civil contempt.

## CONCLUSION

The judgment of the trial court is affirmed and this cause remanded for further

8

proceedings consistent with this opinion. Costs are taxed to Appellant, Raymond Cass Ballard, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

9