IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2023 Session

## ERIC EMORY EDWARDS v. DALLIS LEEANN EDWARDS

**Appeal from the Chancery Court for Rutherford County**
**No. 16CV-320      J. Mark Rogers, Judge**

———————————————————

### No. M2022-00614-COA-R3-CV

———————————————————

In this post-divorce action, the trial court modified the permanent parenting plan to provide the father with equal co-parenting time after the father and the mother had, by oral agreement, lived by an alternate plan for approximately sixteen months during the COVID-19 pandemic in an effort to adapt to their child's virtual education from home. The mother has appealed, arguing that the trial court erred by finding a material change in circumstance affecting the child's best interest and by determining that modification of the parenting plan was in the child's best interest. Both parties have requested attorney's fees on appeal. Discerning no reversible error, we affirm. We decline to award attorney's fees to either party.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Christina Hammond Zettersten, Brentwood, Tennessee, for the appellant, Dallis Leeann Rutter (Edwards).

R. Wilford Fraley, III, Murfreesboro, Tennessee, for the appellee, Eric Emory Edwards.

## OPINION

### I. Factual and Procedural Background

This action involves the modification of a permanent parenting plan that derives from a prior divorce action filed by Eric Emory Edwards ("Father") against Dallis Leann Edwards, now Dallis Leann Rutter ("Mother"), in the Rutherford County Chancery Court

("trial court") on March 3, 2016. On August 23, 2016, Father and Mother entered into a marital dissolution agreement and agreed permanent parenting plan ("PPP") concerning their only child, a daughter ("the Child"), who was then approximately eight years old. The trial court entered a final decree of divorce on September 9, 2016, approving the martial dissolution agreement and approving the PPP upon finding it to be in the Child's best interest.

The PPP named Mother the primary residential parent, assigned to her 210 co-parenting days, and assigned to Father 155 co-parenting days. The "Day-To-Day Schedule" was set forth as follows:

> The mother shall have responsibility for the care of the [Child] except at the following times when father shall have responsibility:
>
> From Thursday, upon the [Child's] dismissal from school or at 3:00 p.m. if not in school, until Monday morning, with father to be responsible for returning the [Child] to school, or at 8:00 a.m., if not in school, every other weekend. On the week following father exercising residential time, father shall exercise residential time from Thursday, upon the [Child's] dismissal from school or at 3:00 p.m. if not in school, until Friday morning, with father to be responsible for returning the [Child] to school, or at 8:00 a.m., if not in school.

Therefore, the ordinary, day-to-day residential parenting schedule provided co-parenting time to Father on Thursdays through Sundays one week with one night of co-parenting time on Thursday nights the following week.

In contrast, the "Summer Vacation" schedule was set forth as follows:

> The parties shall exercise shared parenting time during the child's summer vacation from school. The parent exercising residential time on the weekend following the child's dismissal from school shall have the child from Friday at 3:00 p.m. until the following Friday at 3:00 p.m., being a seven day period. However, the parent not exercising residential time during said week shall have the child from Wednesday at 5:00 p.m. until Thursday morning, with the parent to return the child to the childcare provider or at 8:00 a.m. to the other parent, unless the parent exercising the residential time for the week is on vacation with the child. The parties shall alternate the child on a weekly basis thereafter, until the weekend prior to the children returning to school, when the parties shall revert to the B. Day to Day schedule above.

The "Summer Vacation" schedule provided each parent with co-parenting time every other week with the caveat that the parent not exercising co-parenting time for the given week would exercise co-parenting time on Wednesday night during the other parent's week.

On September 30, 2021, Father filed a petition to modify the PPP. Father asserted that there had been a "substantial and material change of circumstance affecting the best interest" of the Child, which he alleged necessitated modification of the co-parenting schedule with designation of Father as the primary residential parent. Father claimed that the parties' failure to adhere to the residential co-parenting schedule and Mother's "pending relocation" were substantial and material changes of circumstance. According to Father, the parties had failed to follow the PPP as written, and he had "enjoyed liberal visitation" with the Child, parenting the Child more than the time provided for in the PPP. Father stated that the parents had followed the "week off, week on" "Summer Vacation" schedule during the COVID-19 pandemic. In addition, Father averred that he had parented the Child during many evenings throughout the school year for dinner and homework, as well as on Sundays for church.

Father additionally asserted that he had learned on September 21, 2021, that Mother's home was under contract for sale and that she intended to move to Fairview, Tennessee, "uprooting the minor child from her school." According to Father, Fairview was farther than fifty miles from Mother's current residence, and her relocation would render the parenting plan unworkable. Father alleged that Mother had not yet properly informed him of her move in accordance with the PPP. Father further posited that the Child was exceptionally comfortable at her current school and that she required "greater stability than most children" due to the fact that she had Down Syndrome. In addition, Father claimed that the Child had an "extremely strong bond" with him and that Mother's planned relocation would be "detrimental" to their relationship. Therefore, Father claimed it was not in the Child's best interest for Mother to continue in the role of the primary residential parent. Father requested that the trial court enjoin Mother from removing the Child from her current school, find that there had been a substantial and material change of circumstance warranting a modification of the co-parenting schedule, name him the primary residential parent, enter his proposed permanent parenting plan, review the child support obligation, and set future support.[1]

Mother filed an answer on October 27, 2021, denying several of the averments in Father's petition. Mother first contended that Father had failed to state a claim upon which relief could be granted. Mother further denied that there had been a "substantial and

---

[1] Father also averred that Mother's income had increased over the years, warranting a modification of child support, but that he had not sought relief of that kind in an "effort to maintain an amicable relationship" with Mother. In her answer, Mother admitted that she had experienced increased earnings due to a change in employment in February 2020 but that she was "without knowledge or information sufficient to form a belief as to the truth of whether [her] increased earnings would warrant a modification of child support." Father's payment of child support is not at issue on appeal.

- 3 -

material change in circumstance" affecting the Child's best interest although she acknowledged that the parties had at times "deviated from" the PPP's "Day-To-Day" schedule in favor of the "Summer Vacation" schedule during the "2020/2021 school year." According to Mother, the parties' agreed deviation from the co-parenting schedule was "solely and specifically due to the fact that the child participated in 'distance learning' during the 2020/2021 school year, during which time Mother exercised parenting time with the child during all ordinary school hours and oversaw all 'distance learning.'" Mother stated that the parties utilized the "Summer Vacation" schedule during the 2020/2021 school year except that during Father's weekday parenting time, Mother took care of the Child and facilitated the Child's "distance learning" from the beginning of Father's workday until the end of Father's workday, approximately 7:00 a.m. until 5:00 p.m.

With respect to Father's averments concerning Mother's relocation to Fairview, Mother claimed that on or around September 21, 2021, she had notified Father that she had listed her home for sale and intended to relocate. However, Mother averred that she had decided to remove her home from the market shortly thereafter. Mother requested that the trial court dismiss Father's petition and assess "attorney's fees and Court costs against Father."

Following a hearing on March 3, 2022, the trial court entered an order on April 18, 2022, adjudicating Father's petition. In its order, the court dispensed with Father's averments related to Mother's purported relocation plans, finding that Mother had not relocated and that she had confirmed she was not seeking permission to relocate. Concerning Father's request to modify custody of the Child, the court found:

In failure to adhere to the parenting plan, if the parties had a parenting plan and then one party wasn't following it, that's obviously a material change in circumstance. In this case, the parties mutually agreed not to adhere to the parenting plan. There was no failure to adhere. There was a positive decision by both parents that even though they had this every-two-week-rotation parenting plan that I've gone through and identified. There's nothing wrong with that. The parties ought to be congratulated for it because they put the child first. The failure to adhere to the parenting plan, an agreement to do things that's in the best interest of the child is not a failure of the parenting plan. There was an agreement into which the parties entered. And the custody and visitation has worked well for this child. She's done well. Father could not have done what he did without Mother agreeing to take this child every day of the distance learning time because of his time to go to work. Mother should be commended for doing that. That was a very positive, good thing that she did. The Court commends her for that and doesn't find any fault with it. Mother and Father were doing as much as they could and equalized, in the Court['s] findings, their time with their child to the child's benefit and best interest. However, the Court finds that Father

- 4 -

has failed by a preponderance of the evidence to carry or establish a material change in circumstance that would change the custody of this child from Mother. There has been no proof to establish a material change in circumstances that would warrant a modification of custody.

Nevertheless, the trial court found that Father had presented sufficient evidence to establish a material change in circumstance such that a modification of the residential co-parenting schedule was warranted.

The trial court proceeded to examine each of the statutory best interest factors pursuant to Tennessee Code Annotated § 36-6-106. The court found that its review of the best interest factors reaffirmed its determination that no change or modification of the primary residential parent designation was warranted. The court then stated that it "must now determine if the proposed parenting plan of Father [was] in the best interest" of the Child. Acknowledging the schedule the parents had followed during the 2020-2021 school year, the court indicated that it found "no reason that this child should not be on an equal basis with the parents 50-50." The court further ordered each party to pay his or her own attorney's fees and divided the court costs equally between the parties. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for this Court's review, which we have restated as follows:

1.  Whether the trial court abused its discretion by finding that a material change in circumstance justified a modification of the residential co-parenting schedule.

2.  Whether the trial court abused its discretion by finding that it was in the best interest of the Child that the residential co-parenting schedule be modified.

3.  Whether Mother should be awarded attorney's fees on appeal.

Father presents the following additional issue:

4.  Whether Father should be awarded attorney's fees on appeal.

## III. Standard of Review

With regard to the proper standard of review in a case involving modification of a co-parenting schedule, our Supreme Court has elucidated:

- 5 -

In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [ (Tenn. 2005) ]; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

* * *

Once a permanent parenting plan has been incorporated in a final divorce decree, the parties are required to comply with it unless and until it is modified as permitted by law. *See* Tenn. Code Ann. § 36-6-405 (2010). In assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstances has occurred and then apply the "best interest" factors of section 36-6-106(a). *Id.* § 36-6-101(a)(2)(B)-(C) (2010), -106(a) (2010 & Supp. 2013); *see also Kendrick*, 90 S.W.3d at 570; *Boyer* [*v. Heimermann*]*, 238 S.W.3d [249,] 255 [(Tenn. Ct. App. 2007)].

Finally, pursuant to the modification procedures described in section 36-6-405(a), the court must apply the fifteen factors of section 36-6-404(b), so as to determine how, if at all, to modify the residential parenting schedule. Just as the court's processes for determining the child's best interests and residential schedule when making its initial custody decisions overlap substantially, here again the two analyses are likely to be quite similar. *Compare* Tenn. Code Ann. § 36-6-106(a)*, with* Tenn. Code Ann. § 36-6-404(b).

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93, 698-99 (Tenn. 2013). Additionally, "[w]e defer to the trial court's determinations of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony." *Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

## IV. Modification of Residential Co-Parenting Schedule

### A. Material Change in Circumstance

Mother first argues that the trial court erred by failing to determine whether a material change in circumstance affected the Child's best interest before modifying the PPP. According to Mother, the trial court failed to include findings of fact or conclusions of law with respect to whether a material change of circumstance had affected the Child's best interest, thereby applying an incorrect legal standard and rendering insufficient findings.

Tennessee Code Annotated § 36-6-101(a)(2)(C) (Supp. 2022), the statutory provision addressing modification of residential co-parenting schedules, provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove

by a <u>preponderance of the evidence a material change of circumstance affecting the child's best interest</u>. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

(Emphasis added.)

In addition, this Court has recently summarized the analysis a trial court should undertake when considering the modification of residential co-parenting schedules, providing:

The law on modification of residential parenting schedules is well established and governed by statute. When considering a petition to modify a residential schedule, courts must first determine whether the petitioner proved "a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C); *see Armbrister*, 414 S.W.3d at 697. If the trial court finds a material change in circumstance affecting the child's best interest, it must then "determine whether modification of the schedule[ ] is in the best interest of the child[ ], utilizing the factors at § 36-6-106(a)." *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018) (quoting *Allen v. Allen*, No. W2016-01078-COA-R3-CV, 2017 WL 908319, at *8 (Tenn. Ct. App. Mar. 7, 2017)).

The material-change requirement in § 36-6-101(a)(2)(C) provides child support and custody decisions with a modicum of finality akin to that provided by the doctrine of res judicata. *See Armbrister*, 414 S.W.3d at 698-99. Res judicata "prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* at 698 n.15 (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). So too, the material-change requirement prevents inconvenience to the litigants and the courts by preventing parties from relitigating matters related to custody "upon the same evidence and the same facts." *See id.* at 699 (quoting *Hicks v. Hicks*, 176 S.W.2d 371, 375 (Tenn. Ct. App. 1943)). By requiring a petitioner to prove a material change in circumstance affecting the child's best interest, the statute "balance[s] the interests in finality and stability against the practical reality that changes may

occur after the initial custody or visitation decree which necessitate modification." *Id.* (citing *Ellis v. Carucci*, 161 P.3d 239, 243 (Nev. 2007)).

Section 36-6-101(a)(2)(C) "sets '"a very low threshold for establishing a material change of circumstances"'" when a party seeks to modify a residential parenting schedule." *Id.* at 703 (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007)). Two factors are relevant considerations in determining whether there was a material change in circumstance for the purposes of modifying a residential schedule: (1) "whether a change has occurred after the entry of the order sought to be modified"; and (2) "whether a change is one that affects the child's well-being in a meaningful way." *Drucker v. Daley*, No. M2019-01264-COA-R3-JV, 2020 WL 6946621, at *7 (Tenn. Ct. App. Nov. 25, 2020) (citations omitted).

*Emch v. Emch*, No. M2021-00139-COA-R3-CV, 2022 WL 3972749, at *5-6 (Tenn. Ct. App. Sept. 1, 2022).

The threshold issue before this Court is whether the trial court properly found a material change of circumstance affecting the Child's best interest. *See Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007) ("[T]he threshold inquiry for a trial court faced with a petition to modify the parties' parenting arrangement is whether a material change in circumstance has occurred."). In its final order, the trial court clarified numerous times that it did not find that the parties had failed to adhere to the PPP but that they had "mutually agreed not to adhere to the parenting plan," which was a "positive decision by both parents." The trial court further elucidated in pertinent part:

The failure to adhere to the parenting plan, an agreement to do things that's in the best interest of the child is not a failure of the parenting plan. There was an agreement into which the parties entered. And the custody and visitation has worked well for this child. She's done well. . . . Mother and Father were doing as much as they could and equalized, in the Court['s] findings, their time with their child to the child's benefit and best interest.

* * *

The argument being made is failure to adhere to the parenting plan or that Mother abandoned or gave up her time. The Court has previously found that she did this by mutual agreement with Father. The Court finds it impossible to ignore the fact that Mother, by agreeing to allow Father to have such additional time, must have trusted him. She knew he would take care of the child. She had no objection to his parenting skills or his work with the child.

- 9 -

* * *

Father has put on enough evidence to establish that these parties went for over a year and a half, April of 2020 to August of 2021, doing a week-to-week visitation schedule with a break on Wednesday night that Father doesn't like. During the 2020/2021 school year, the child participated in distance learning at Mother's home in lieu of attending in-person classes at school. Father has shown to be a good father. He has exercised every bit of the time he was granted and when more time was allowed, he took it, and he exercised it, and he did everything he could to facilitate and help the child. Both of these parties are good parents. This is a case where neither parent stands before the Court with some baggage that they're not competent, qualified, good parents. It's just the opposite of that.

Looking at the location of the residence of the parents right now, they live in the same community. That means the child has been able to go to the same school. The Court hopes that will continue. This child certainly needs stability in her life, but she also needs the influence and impact of both parents on her childcare and child raising.

* * *

One must acknowledge the schedule for a year and a half. Probably more so because of Mother's availability and willingness to assist with distance learning. The Court finds no reason that this child should not be on an equal basis with the parents 50-50. And that's what the Court orders. Father had some concern about the Wednesday night overnight, but Mother prefers the Wednesday night visitation take place as the parties have done. It is so ordered.

In summary, the modification of the parenting schedule is based on several matters. The parties, in effect, modified the schedule by agreement. During that period (over a year and a half) it worked. They were doing a 50-50 schedule, except for Father taking the child to Mother for the school day because the child was doing distance learning. The Court finds that to be a factor that the Court considered, gave weight, and found that Father and Mother both were equal in their parenting skills and ability. Since their divorce and entry of the prior permanent parenting plan, Father has been a stalwart in staying forward and being involved in the child's life. The Court is not taking away from Mother, but the child's best interest is served by having both parents involved in her life, especially with her special needs. The needs of this child that are a major consideration, and the father's role in providing her with education assistance and working with her on all different

- 10 -

facets of life in his home—he's dedicated himself to this daughter just as Mother has—but that's an appropriate factor to consider. Additionally, the long-term benefit of this child is to have the impact of both parents in that role to help educate her, train her, teach her which is invaluable.

(Emphasis added.)

In reviewing the trial court's reasoning, we emphasize the "very low threshold for establishing a material change of circumstances" with respect to modification of a residential co-parenting schedule, as well as our adherence to the General Assembly's "policy decision to make it easier to establish that a material change in circumstances has occurred." *Boyer v. Heimermann*, 238 S.W.3d 249, 257, 259 (Tenn. Ct. App. 2007) (quoting *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006)). The trial court's stated reasoning for its finding of a material change in circumstance is predicated upon the parties' mutual agreement to modify the PPP and their approximately sixteen-month long deviation from the PPP's co-parenting schedule. In addition, the court determined that the success of this alternative schedule, as well as Father's demonstrated parenting skills and willingness to spend as much co-parenting time with the Child as possible, established that the altered schedule was in the Child's best interest. Apparently, the court determined that a new status quo had been established and that the success of this new residential schedule routine justified formalizing the change with a modification to the parenting plan. We discern no error in the court's analysis or determination.

Again, we emphasize that Father needed to prove a material change of circumstance affecting the Child's best interest only by a preponderance of the evidence and that this has been described as a "very low threshold." *Id.* Certainly, the effect of the COVID-19 pandemic, the Child's "distance learning," and the impact these two factors had on this family's routine, to the degree that the residential co-parenting schedule was not followed from April 2020 to August 2021, would suffice as material changes to the parties' circumstances. This Court has previously considered deviation from a parenting plan as one "potential reason for changing a residential schedule." *See Cook v. Cook*, No. M2015-00253-COA-R3-CV, 2015 WL 8482403, at *5 (Tenn. Ct. App. Dec. 9, 2015) (determining that, *inter alia*, the parents had deviated from the parenting plan several times and that this was a potential reason for modification as outlined in Tennessee Code Annotated § 36-6-101(a)(2)(C)); *Pace v. Pace*, No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *5 (Tenn. Ct. App. Apr. 26, 2010) (noting that although the mother had permitted the father to exercise more visitation time than that provided for by the parenting plan, there was insufficient evidence from which to "determine the actual visitation exercised by the parties" or to "conclude that the deviation either worked such a benefit, or a detriment, to the child as to justify modification of the schedule").

Furthermore, we do not agree with Mother that the trial court failed to make a finding that the material change in circumstance affected the Child's best interest or her well-being in a meaningful way. The court specifically found that the deviation had worked well for the Child, stating: "Mother and Father were doing as much as they could and equalized, in the Court's findings, their time with their child to the child's benefit and best interest." The court's best interest finding was based upon Father's demonstrated dedication to the Child during the sixteen months that the family lived by a modified schedule, as well as his role in providing the Child with educational assistance and other facets of life in his home. We therefore determine Mother's argument that the court made no finding that the material change in circumstance affected the Child's best interest to be unavailing.

Mother relatedly argues that the parties had, in fact, been following the residential co-parenting schedule as written inasmuch as the PPP provided that the parties should return to the day-to-day schedule upon the Child's return to school, which did not occur until August 2021. Mother's argument is, in essence, that the parties' extension of the summer schedule from April 2020 until August 2021 technically complied with the written instructions of the parenting plan that the parties return to the day-to-day schedule only upon the Child's "returning to school." Mother argues that given that the Child did not return to a physical building for her schooling until August 2021, sixteen months after she was released from school due to the onset of the COVID-19 pandemic, the parties technically were following the PPP as written. Thus, according to Mother, there was no alteration of the PPP or material change in circumstance. We also find this argument to be unpersuasive.

Mother states in her appellate brief that "both parents testified that they believed they were following the parenting plan as the plan stated that they should return to the day-to-day schedule from the summer schedule upon the child returning to school, which did not occur until August of 2021." Based upon our review, the transcript of the hearing does not entirely support Mother's explanation of the testimony. Father explicitly rejected the notion that the parties were merely following the summer schedule as provided by the PPP, specifically denying that the plan provided that the summer schedule would come to an end upon the Child's <u>physical</u> return to school. In addition, although Mother testified that she thought the parties were required to continue under the summer schedule until the Child physically returned to school, she also acknowledged during her testimony that Father and she were operating outside the co-parenting schedule by oral agreement. We therefore do not agree with Mother's characterization of the testimony and affirm the court's finding of a material change in circumstance affecting the Child's best interest.

Despite our holding that the trial court did not err by finding that a material change in circumstance had occurred, we certainly do not wish to signal to parents that an agreement to deviate from a residential co-parenting schedule will invariably constitute a material change in circumstance justifying a court-ordered modification of the residential

co-parenting schedule. Nor do we wish to communicate that a parent who cooperatively agrees to accommodate another parent's schedule or adjust to circumstances that arise from life's unpredictability should risk losing co-parenting time by a court-ordered modification to the residential co-parenting schedule simply because he or she was flexible or amenable to proposed deviations. The facts of the present case are unique in that they involve a significant alteration to the parenting plan that continued for a significant duration of time and that the trial court determined that this new status quo was a success for the Child and parents.

## B. Best Interest of the Child

Mother next contends that the trial court erred by finding that it was in the Child's best interest to modify the co-parenting schedule to provide Mother and Father with equal co-parenting time. According to Mother, the court's best interest finding is an "illogical result" based upon a "clearly erroneous assessment of the evidence." We reiterate that once a trial court determines that a material change of circumstance has occurred, then the court must proceed to determine whether modification of the residential co-parenting schedule is in the best interest of the Child. *See Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018).

Tennessee Code Annotated § 36-6-106(a) (2021) provides the following regarding the best interest of the Child:

(a)     In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)     Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and

- 13 -

continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3)    Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)    The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)    The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)    The love, affection, and emotional ties existing between each parent and the child;

(7)    The emotional needs and developmental level of the child;

(8)    The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court

and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Concerning the best interest analysis, this Court has previously explained:

"Whether modification of a parenting plan serves a child's best interests [is a] factual question[ ]." *Armbrister*, 414 S.W.3d at 692. "The pertinent factors to be considered in the best interest analysis are set forth in Tennessee Code Annotated section 36-6-106." *C.W.H.* [*v. L.A.S.*], 538 S.W.3d [488] at 497 [(Tenn. 2017)]. As this Court has explained, "[a]scertaining a child's best interests does not call for a rote examination" of each of the factors "and

- 15 -

then a determination of whether the sum of the factors tips in favor or against [one] parent." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005). Furthermore, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *Id.*

*In re Jonathan S.*, No. M2021-00370-COA-R3-JV, 2022 WL 3695066, at *9 (Tenn. Ct. App. Aug. 26, 2022). With these principles in mind, we will review the trial court's weighing of the best interest factors.

In analyzing the Child's best interest, the trial court determined that eight out of the fifteen factors weighed equally in favor of Mother and Father. The court weighed factors one, five, and fourteen in favor of Mother although the court appears not to have weighed these factors heavily in her favor. For example, with respect to factor five, the court found that this factor "essentially" weighed equally in favor of both parents but that it "may favor Mother in terms of being primary parent." The court found that factors three, eleven, and thirteen were inapplicable. With respect to factor fifteen, which encompasses any other factors the court may have found to be relevant, the court determined that the Child's special needs were relevant to its determination and that the Child required the care and love of both parents "as much as she possibly can get." Therefore, the court appears to have weighed factor fifteen in favor of Father's proposed modification. Ultimately, the court's determination that the Child benefited from having both parents involved in her life appears to have weighed heavily in favor of Father's proposed modification.

On appeal, Mother posits that the trial court should have weighed six factors in her favor, six factors equally, and three factors as inapplicable. Specifically, Mother argues that the trial court erred by weighing factors two, four, and ten equally in favor of both parents. She also urges that the court erred by only weighing factor five slightly in her favor and failing to make a specific finding concerning factor fourteen.

We first recognize that the trial court did not specifically state whether the fourteenth factor weighed in favor of Mother or Father, but we note that the court apparently weighed this factor in Mother's favor, stating "Mother's schedule has benefited her by allowing her to be at home somewhat greater than . . . Husband can." With respect to factors two, four, five, and ten, Mother contends that the court "failed to consider the parents' past performance of parenting responsibilities, which, from the record, was primarily done by Mother." Mother states that she performed the majority of parenting responsibilities since the parties' divorce in 2016. Similarly, Mother argues that the court did not consider that she had been responsible for ensuring that the Child received all regular medical care with Father only taking the Child to the doctor during emergencies. She further emphasizes that she managed the Child's distance learning during the COVID-19 pandemic.

- 16 -

Upon our thorough review of the record, we conclude that the evidence does not preponderate against the trial court's findings. In concluding that the trial court did not abuse its discretion in its evaluation of the factors enumerated in § 36-6-106(a), we emphasize:

> It is not the function of appellate courts to tweak a visitation order in the hopes of achieving a more reasonable result than the trial court. Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Despite Mother's postulates related to the responsibilities she bore as the primary parent, and particularly the burden of managing the Child's distance learning, the evidence at trial reflected the court's finding that Father also had invested much of his time and energy into raising the Child.

As our Supreme Court in *Armbrister* commended the parents involved in that post-divorce dispute for their "positive and cooperative relationship with each other," we would also be remiss in failing to comment concerning the positive nature of the parties' relationship in the present case. *Armbrister*, 414 S.W.3d at 707. As our High Court noted in *Armbrister*, and as reflected in the trial court's findings in the case at bar, we emphasize:

> Mother and Father are to be commended for not allowing such residual antipathy to interfere with their parenting responsibilities. Our conclusion that the proof supports the trial court's findings that Father established a material change in circumstances and that modifying the residential parenting schedule is in the children's best interests certainly should not be viewed as calling Mother's parenting skills into question. To the contrary, the proof overwhelmingly establishes, as Father put it, that Mother is "a great Mom." The modification does, however, allow Father to move closer to the statutory goal, which is to allow both parents to enjoy the "maximum participation possible" in the lives of their children. Tenn. Code Ann. § 36-6-106(a) (Supp. 2013). Recognizing their combined efforts to date, we encourage these parents to continue focusing upon, and working together to foster, the best interests of their children.

*Id.*

- 17 -

In the present case, the trial court explained:

> It should not be argued that [Mother] is being punished. No one wants to punish any parent for being a good parent. She has been an excellent parent to this child. At the same time, Father has been a good, excellent parent. The parties have been able to coparent and rely on each other rather than calling upon others, all to the benefit of their child.

We concur in the trial court's analysis here and affirm its finding that the modification was in the Child's best interest. Rather than using modification to punish Mother or reward Father, the court merely formalized the schedule that the parents had been largely following, particularly during the timeframe between April 2020 and August 2021, but also prior to that period. The evidence reflected that it was not uncommon even prior to the COVID-19 pandemic for Mother to afford Father additional co-parenting time not provided for by the PPP. *See Armbrister*, 414 S.W.3d at 707 ("The trial court also structured the modified residential parenting schedule so that it reflected the way Father and Mother had already been cooperating with each other to afford Father additional time."). In addition, the modification achieves the statutory goal of enabling both parents to enjoy the "maximum participation possible" in the life of the Child. *See* Tenn. Code Ann. § 36-6-106(a). We again reiterate that this case presents unique facts that should not be taken to signal that every mutual agreement between parents to deviate from a residential co-parenting schedule invariably constitutes a material change of circumstance affecting a child's best interest.

In conclusion, given the low threshold for proving a material change in circumstance affecting the Child's best interest in an action to modify a residential co-parenting schedule, as well as the deferential standard of review applicable to modification of a residential co-parenting schedule and the determination of a Child's best interest, we conclude that the trial court properly considered the applicable statutory factors and did not abuse its discretion by modifying the PPP to provide Father with an equal amount of co-parenting time.

### V. Attorney's Fees on Appeal

Both Mother and Father request attorney's fees on appeal. In so arguing, Mother cites Tennessee Code Annotated § 36-5-103(c) (Supp. 2022), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the

custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Mother contends that we should award attorney's fees to her inasmuch as the trial court's decision was against logic and reasoning. Considering the favorable outcome of this appeal to Father, we decline to award attorney's fees to Mother.

Father similarly argues that he should be awarded attorney's fees pursuant to Tennessee Code Annotated § 27-1-122 (2017), which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This Court has previously explained:

Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.

A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

We determine that Mother's appeal was not so devoid of merit as to be deemed frivolous. Therefore, we exercise our discretion to deny Father's request for attorney's fees and costs on appeal.

VI. Conclusion

For the foregoing reasons, we affirm the trial court's modification of the parties' residential co-parenting schedule to provide Father with equal co-parenting time. We decline to award attorney's fees on appeal to either party. Costs on appeal are assessed to the appellant, Dallis Leeann Rutter.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE

- 19 -